# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ALAN R. WARD,**

    Petitioner,

 v.               Case No. 07C0961

**JODINE DEPPISCH, Warden,**
**Fox Lake Correctional Institution**
    Respondent.

---

## DECISION AND ORDER

Petitioner Alan R. Ward has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, his petition will be denied.

## I. BACKGROUND

In 2004, Ward pleaded guilty to theft in a business setting,[1] Wis. Stat. § 943.20(1)(b), and felony bail jumping, Wis. Stat. § 946.49(1)(b). His theft conviction arose out of his home improvement business, in which he allegedly accepted down payments from homeowners but never performed the work that he contracted to perform. The bail jumping charge resulted when Ward continued his allegedly corrupt business practices in violation of the terms of his signature bond. A Wisconsin trial court sentenced him to a total of fourteen years in state custody, consisting of five years initial imprisonment and nine years extended supervision. Ward unsuccessfully sought postconviction relief from the state trial court. The state court of appeals affirmed Ward's conviction and the denial

---

[1] In the context of Ward's case, theft in the business setting can also be referred to as "theft by contractor." See Wis. Stat. § 779.02(5) (providing that "theft by contractor" constitutes "theft" under Wis. Stat. § 943.20).

of his postconviction motion. Ward sought review from the state supreme court, but the court declined to review the case. Having exhausted his state remedies, Ward now seeks habeas review.

## II.  HABEAS STANDARD

A petition for a writ of habeas corpus under § 2254 raises the question of whether a state is holding the petitioner in custody unconstitutionally. Even if a petitioner's custody offends the Constitution, however, Congress has circumscribed the authority of federal courts to grant the writ. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may issue the writ only if the decision of the last state court to examine the merits of the petitioner's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). In assessing the reasonableness of the state court's decision, the federal court must assume that the state courts' factual determinations are correct unless the defendant rebuts them with clear and convincing evidence. Id. § 2254(e)(1).

An "unreasonable application of Supreme Court precedent" occurs when "the state court identifies the correct governing legal rule but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 407 (2000).

2

## III. DISCUSSION

Ward's petition raises five claims. The first three allege breach of the plea agreement. The fourth alleges that Ward's trial attorneys were ineffective. The final claim alleges that the judge presiding over Ward's sentencing committed misconduct. Because all of Ward's claims focus on events arising out of his guilty plea and sentencing, I will first discuss these events.

Ward entered his guilty plea on March 10, 2004. He was represented by Attorney Roger Klopp. The prosecutor recited the plea agreement as follows[2]:

> Your Honor, the plea agreement in this matter requires that Mr. Ward enter pleas of guilty to Count 1 in 03 CF 43 of the amended information. <u>That is theft by contractor, Class D felony, may be fined not more than $10,000 and imprisoned not more than 15 years or both</u>. From the amended information that is a truth in sentencing 1 case.
> The State would move to dismiss the remaining Counts, 2 through 5, and have them available for reading in for purposes of sentencing and restitution.
> In case No. 04 CF 4, a plea of guilty to Count 2, that being felony bail jumping, a Class H felony, may be fined not more than $10,000 and/or imprisoned not more than 6 months – or six years, excuse me, or both. That also is a truth in sentencing 2 matter.
> The State would move to dismiss Count 1 but read in for purposes of sentencing and restitution.
> In 04 CF 5, it would also be an entry of a plea to Count 2 of guilty, same bail jumping, same penalty as previously referred to, truth in sentencing 2 case. The State moves to dismiss Counts 1 and 3 through 6. Again, being read in for purposes of sentencing and restitution.
> In case 04 CF 6, the plea of guilty to Count 1 and 2. Count 1 being theft by contractor greater than [$]2500 but less than $5,000 an I felony, may be fined not more than $10,000 and or imprisoned not more than three years and six months, a truth in sentencing 2 crime, and felony bail jumping as previously indicated, an H felony, $10,000 and/or not more than 6 years, a truth [in] sentencing 2 crime. The remaining counts, 3 through 8 from the

---

[2]The charges against Ward were brought under four separate case numbers – 2003CF43, 2004CF4, 2004CF5 and 2004CF6. Thus, the transcripts refer to different case numbers at different times.

> information would be dismissed but, again, read in for purposes of restitution and sentencing.
>
> <u>Additionally, you have on your desk a stipulation involving these cases. It is a portion of the plea agreement that we agree that the court can consider for purposes of sentencing and restitution. There are seven identified items. The agreement is that we will not additionally charge those.</u>
>
> <u>Those items are subject to a restitution hearing and within the next two weeks Attorney Klopp will provide the court and the State an itemized list of which one of these actually form a basis of a requested restitution hearing, and we are asking that hearing be held prior to sentencing in this matter, or with the sentencing, one or the other</u>. It also doesn't matter to us, that's also true for restitution being claimed for restitution for which he entered pleas.
>
> . . . .
>
> . . . Probably one thing there's concern about that's missing. We are asking for presentence investigation. The parties will be left free to argue. <u>We agree that restitution can be determined as to all victims by hearing before the court</u>, and we agree to cap any initial confinement recommendation that would be made possibly through the presentence at six years total for all charges that he would plead to.

(Answer Ex. 73 at 7-10 (emphasis added).) At this point, the trial court asked Ward's attorney whether the prosecutor had correctly stated the terms of the plea agreement, to which Attorney Klopp responded:

> Yes, Your Honor, with the exception that there is a three or four page attachment under the restitution stipulation, which you have, has list of victims with restitution to be read in.
>
> . . . .
>
> Those were going to be read in for restitution and sentencing purposes as well. I believe three sheets. One or two people listed on one sheet and then one sheet [with] ten people listed on it.

(Answer Ex. 73 at 10.) Attorney Klopp was referring to a stipulation signed by the prosecutor, Klopp and Ward. (Answer Ex. N.) The stipulation described seven offenses and stated that the state agreed not to charge such offenses in exchange for Ward agreeing that the court could consider the offenses for purposes of sentencing and

4

restitution.[3] The parties and the court had a brief discussion about the stipulation, and the court confirmed that the attorneys and Ward understood that the stipulation would become part of the plea agreement. (Answer Ex. 73 at 10-11.)

After some initial confusion as to whether Ward would plead no contest or guilty (Answer Ex. 73 at 11-13), Ward pleaded guilty as provided in the plea agreement (Answer Ex. 73 at 13-15). The court then went over the elements of the crimes to which he had pleaded guilty, as well as the maximum sentences for each crime. (Answer Ex. 73 at 15-18.) With respect to the theft by contractor charge, the court asked Ward if he understood that the maximum possible penalty for the crime was a $10,000 fine, six years in prison, or both, and Ward answered affirmatively. (Answer Ex. 73 at 16.) The court then accepted Ward's plea. (Answer Ex. 73 at 24.) At the end of the plea hearing, the trial court scheduled a date for the sentencing and restitution hearing. (Answer Ex. 73 at 24, 26-27.) When selecting the date, the court took into account the need to conduct a presentence investigation, and left enough time to allow the presentence to be completed prior to the hearing. (Answer Ex. 73 at 24.)

For unknown reasons, Ward did not show up for his interview with the presentence investigator. This prompted the prosecutor to request a status conference to inquire into Ward's whereabouts. (Answer Ex. 77.) At the conference, the prosecutor noted that Attorney Klopp had begun to work with the prosecutor to identify the items of restitution

---

[3]Under Wisconsin law, a court is required to order restitution to "any victim of a crime considered at sentencing." Wis. Stat. § 973.20(1r). The plea agreement in Ward's case provided that the offenses listed on the stipulation could be "considered at sentencing" but that Ward would be entitled to a restitution hearing at which he could contest the amount of restitution owed to each victim.

5

Ward disputed, but this effort was suspended when Ward failed to appear at his presentence interview. (Answer Ex. 77 at 2-4.) Because of Ward's failure to appear at either the presentence interview or the status conference, the court issued a bench warrant for his arrest and removed the sentencing and restitution hearing from the calendar. On July 5, 2004, Ward was arrested and brought before the court for a revocation hearing. (Answer Exs. O & 76.) The court revoked Ward's bond to ensure that the presentence would be completed. As to the sentencing and revocation hearing, the court noted that it would set a date once the presentence was completed.

On August 20, 2004, Attorney Klopp filed a motion to withdraw as Ward's counsel, explaining that Ward had asked the public defender to appoint a new attorney. (Answer Ex. P.) The court granted this motion, and the public defender appointed Attorney Gerald Opgenorth to represent Ward.

The court held Ward's sentencing hearing on February 11, 2005. (Answer Ex. 74.) Ward appeared at this hearing and was represented by Opgenorth. At the beginning of the hearing, the prosecutor reminded the court that the original plan was to hold the sentencing and restitution hearings simultaneously, but that the February 11 hearing was scheduled to address only sentencing. Opgenorth then indicated that although he was prepared to go forward with sentencing, he was not prepared to deal with the restitution issues. The court decided to proceed with sentencing and stated to Opgenorth that "if you want a restitution hearing within 30 days, you can make that request, otherwise the State can indicate what they believe restitution is." (Answer Ex. 74 at 3.) Later in the hearing, the court clarified this ruling when the state introduced an exhibit containing the state's

6

proposed restitution. The court asked Opgenorth if he had any objection to admitting the exhibit, and when Opgenorth said he did not, the court stated that

> Exhibit 1 will be admitted as State's proposed restitution, subject of course to defendant requesting a hearing within 30 days. If no hearing is requested within 30 days these amounts to these individuals will be ordered as restitution by the court.

(Answer Ex. 74 at 13-14.) Finally, in pronouncing Ward's sentence, the court reiterated that Ward had "[t]hirty days within which to file a request for a hearing on restitution." (Answer Ex. 74 at 54.)

On February 18, 2005, Opgenorth sent a letter to Ward asking that he review the restitution materials and determine which restitution claims to challenge. (Answer Ex. U.) On February 22, 2005, Opgenorth filed a notice of intent to seek postconviction relief.[4] The notice stated that Ward requested that the public defender appoint post-conviction counsel. (Answer Ex. R ¶ 5.) The public defender appointed post-conviction counsel, but on July 11, 2005, the state court of appeals issued an order allowing Ward's post-conviction counsel to withdraw. (Answer Ex. W.) The court of appeals found that Ward voluntarily and knowingly waived his right to counsel on appeal. From that point, Ward proceeded pro se. Neither Ward nor any of his attorneys requested a restitution hearing within thirty days of the sentencing. Thus, in accordance with its ruling at the sentencing hearing, the court ordered restitution as provided in the state's proposal.

---

[4]Wisconsin law requires a defendant seeking postconviction relief to file a notice of intent to pursue such relief within 20 days of sentencing. Wis. Stat. § 809.30(2)(b).

7

## A. Breach of Plea Agreement

Ward's first two habeas claims allege that the prosecutor breached the plea agreement by (1) allowing Ward to plead guilty to a Class C felony when the plea agreement recited that Ward was to plead guilty to a Class D felony, and (2) allowing the judge to order restitution without conducting the hearing called for by the plea agreement. Ward's third claim is that the trial judge breached the plea agreement by imposing restitution without conducting a restitution hearing. Ward's second and third claims are identical for all practical purposes, and thus I construe them as stating a single claim that the plea agreement was breached when restitution was ordered without a hearing. I discuss these claims below.

A defendant has a constitutional right to have the prosecutor honor the terms of his plea bargain. Santobello v. New York, 404 U.S. 257, 262 (1971); see also Mabry v. Johnson, 467 U.S. 504, 507-11 (1984) (discussing scope of constitutional rights that arise in plea bargaining). Plea agreements are contracts that must be fulfilled. Hartjes v. Endicott, 456 F.3d 786, 790 (7th Cir. 2006). "Nevertheless, not every breach of a plea agreement merits relief. The breach must be material or substantial, not merely technical." Id.

Ward first argues that the terms of the plea agreement were that Ward would plead guilty to a Class D felony, and that therefore his conviction of a Class C felony (which carries a stiffer maximum penalty than a Class D felony) was a breach of the agreement. Ward relies on the following statement by the prosecutor at the plea hearing:

> Your Honor, the plea agreement in this matter requires that Mr. Ward enter pleas of guilty to Count 1 in 03 CF 43 of the amended information. That is theft by contractor, Class D felony, may be fined not more than $10,000 and

8

>     imprisoned not more than 15 years or both. From the amended information
>     that is a truth in sentencing 1 case.

(Answer Ex. 73 at 7 (emphasis added).) Although the prosecutor described theft by contractor as a Class D felony, in fact it was a Class C felony. However, the prosecutor accurately described the penalty associated with a Class C felony – a fine of not more than $10,000 and not more than 15 years in prison, or both. See Wis. Stat. Ann. § 939.50(3)(c) (2002). Thus, it is obvious that the prosecutor misspoke when she described theft by contractor as a Class D felony. Had she spoken more carefully, she would have said that theft by contractor was a Class C felony.

The prosecutor's misstatement was not part of the plea agreement because it did not accurately reflect the agreement reached by the parties and accepted by the court. The record reflects that the plea agreement provided that in exchange for the dismissal of Counts 2 through 5 of the amended information, Ward would plead guilty to Count 1, which charged theft by contractor of property with a value exceeding $2,500. Count 1 of the amended information clearly described this offense, noted it was a Class C felony, and accurately described the maximum penalty as 15 years and $10,000. (Answer Ex. L.) When the prosecutor recited the plea agreement, she likewise described the maximum penalty accurately, although she used the wrong letter of the alphabet. Finally, during the plea colloquy, the trial judge confirmed that Ward understood that by pleading guilty to Count 1 of the amended information, he was pleading guilty to an offense that carried a maximum penalty of 15 years and $10,000. (Answer Ex. 73 at 16.) All of this makes clear that Ward, his attorney, the prosecutor, and the judge understood that the plea agreement contemplated Ward's pleading guilty to a crime classified as a Class C felony. There was

never any agreement to plead to a Class D felony, only an inconsequential misstatement. Thus, when the judge entered a judgment of conviction stating that Ward was convicted of theft by contractor and described that offense as a Class C felony, Ward got exactly what he bargained for. The state court did not err by rejecting Ward's claim.

Ward's second argument is that the plea agreement gave him the right to a hearing on the restitution claims, at which he would be allowed to challenge the amount of restitution awarded to each victim, but that the court failed to provide him with such a hearing, thereby breaching the plea agreement. This argument fails. Although no hearing was held on Ward's restitution claims, Ward has no one but himself to blame for that. As summarized above, the restitution hearing was supposed to take place at the same time as the sentencing, but Ward's attorney was not prepared to go forward with the restitution hearing at that time. The court agreed to give Ward and his attorney thirty days after sentencing to request a restitution hearing. The court clearly stated that if no hearing was requested within that time, the court would order restitution in the amounts proposed by the prosecution. For unknown reasons, neither Ward nor his attorneys requested a restitution hearing within the prescribed time frame. Nothing in the record suggests that the prosecutor or trial judge prevented Ward or his attorneys from making a timely request. Thus, although the plea agreement gave Ward the right to a restitution hearing, Ward forfeited that right by failing to comply with the trial court's orders. There was no breach of the plea agreement.

**B.    Ineffective Assistance of Counsel**

Ward next argues that two of his attorneys – Klopp and Opgenorth – were ineffective. Ineffective assistance of counsel claims are governed by the Supreme Court's

10

decision in Strickland v. Washington, 466 U.S. 668 (1984). See Hartjes, 456 F.3d at 790. Strickland established a two-part test for evaluating ineffective-assistance claims. First, counsel's performance must have been so defective that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Second, counsel's errors must have prejudiced the defense, meaning that the criminal defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 794. The Supreme Court has held that Strickland's two-part test applies to ineffective-assistance claims arising out of guilty pleas. Hill v. Lockhart, 474 U.S. 52, 57-58 (1985). In the context of guilty pleas, "prejudice" means a reasonable probability that, but for counsel's errors, the criminal defendant would not have pleaded guilty and would have insisted on going to trial. Id. at 59.

In the present case, Ward does not provide much detail in support of his ineffective-assistance claims. True, Ward recites a laundry list of reasons why he thinks his lawyers were deficient, but he does not explain any of his reasons with sufficient detail to enable a court to identify a potential constitutional violation. Ward did not provide the state courts with much detail in support of his ineffective-assistance claims, either. In fact, because of Ward's failure to allege sufficient facts in support of such claims, the state courts rejected them without a hearing, relying on a line of state cases that establish the pleading standard for ineffective-assistance claims. In this court, respondent asserts that the state court's reliance on the state pleading standard means that Ward has procedurally defaulted his ineffective-assistance claims. However, as explained below, the state court ruled on the merits of Ward's ineffective-assistance claims, and therefore Ward has not procedurally defaulted them. Nonetheless, the state court rightly rejected Ward's claims.

11

### 1. Procedural default

Discussing the state court's disposition of Ward's ineffective-assistance claims requires a brief detour into Wisconsin's procedures for handling such claims. Under Wisconsin law, when a criminal defendant wishes to assert that his trial counsel was ineffective, he must file a postconviction motion requesting an evidentiary hearing, called a Machner hearing, to develop the factual basis for the claim by soliciting evidence from the allegedly ineffective attorney. See Wisconsin v. Machner, 92 Wis. 2d 797, 804 (1979); Alliet v. Wallace, No. 05-C-659-C, 2006 WL 768518, at *3 (W.D. Wis. March 22, 2006). However, the Wisconsin courts have held that a defendant is entitled to a Machner hearing only if his postconviction motion alleges facts that, if true, would entitle him to relief under Strickland and its progeny. See generally Wisconsin v. Allen, 274 Wis. 2d 568 (2004); Wisconsin v. Bentley, 201 Wis. 2d 303 (1996). If a postconviction motion does not "raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations . . . the [trial] court has the discretion to grant or deny a hearing." Allen, 274 Wis. 2d at 576. Thus, under Wisconsin law, if the criminal defendant fails to satisfy the pleading standard of Bentley and Allen, the trial court can deny his postconviction motion without a hearing.

In the present case, Ward filed a timely postconviction motion alleging that his trial lawyers were ineffective, and Ward specifically requested a Machner hearing. (Answer Ex. V at 17-24.) The trial court did not hold a hearing or rule on Ward's motion within 60 days of its filing, which, under Wisconsin law, meant that the motion was denied. See Wis. Stat. § 809.30(2)(i). Ward appealed, and the state court of appeals, citing Bentley, rejected Ward's ineffective-assistance claim on the ground that "Ward did not adequately plead it in his postconviction motion." (Answer Ex. F at ¶ 6.) Thus, the basis for the state court's

12

decision was that Ward failed to allege facts that, if true, would have entitled him to relief under Strickland.

Respondent argues that the state court's reliance on the Bentley/Allen pleading standard means that Ward has procedurally defaulted his ineffective-assistance claims. Respondent claims that this pleading standard is an independent and adequate state procedural ground. A federal court will not review a question of federal law decided by a state court if the state-court decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. See, e.g., Farmer v. Litscher, 303 F.3d 840, 846 (7th Cir. 2002). However, if the state-court decision appears to rest primarily on the merits of the federal claim, or to depend on a federal constitutional ruling, there is no independent and adequate state ground. Stewart v. Smith, 536 U.S. 856, 860 (2002); Farmer, 303 F.3d at 846.

In the present case, the state court of appeals disposed of Ward's ineffective-assistance claims on their merits, rather than on the basis of an independent and adequate state procedural rule. Although the Bentley/Allen pleading standard may be a state procedural rule, it is a procedural rule that depends upon the merits of the federal constitutional claim that the defendant is attempting to plead. The pleading standard provides that the defendant is not entitled to an evidentiary hearing unless he alleges facts that, if true, show that he is entitled to relief under Strickland. To make this determination, the state court must apply Strickland to the facts pleaded in the postconviction motion. That is a ruling on the merits of the federal claim. Essentially, the state court determined that Ward failed to state a claim upon which relief may be granted, which, as the Seventh Circuit has held, is a decision on the merits, not procedural default. Davis v. Lambert, 388

13

F.3d 1052, 1058 (7th Cir. 2004). There is simply no way to separate the merits of Ward's ineffective-assistance claims from the question of whether he has pleaded valid ineffective-assistance claims. Thus, Ward has not procedurally defaulted such claims.

**2.     Merits**

Turning to the merits of Ward's ineffective-assistance claims, I find that he is not entitled to relief. I begin by describing Ward's ineffective-assistance claims, which is no easy task. From my review of Ward's filings, it seems as though he alleges that Attorney Klopp committed the following errors: (1) Klopp "changed" Ward's no contest plea to a plea of guilty without Ward's consent; and (2) he waived Ward's right to a preliminary hearing without Ward's consent. In addition, Ward seems to allege that Opgenorth was ineffective for the following reasons: (1) He did not move to withdraw Ward's guilty plea; (2) he did not "bring the breach of the plea agreement to light"; (3) he did not make an argument based on the statute of limitations that Ward wanted him to make; and (4) he failed to challenge some of the restitution claims that, in Ward's view, the victims exaggerated.[5]

---

[5] It is likely that Ward thinks that his counsel committed other errors as well, but the errors listed in the text are the only errors that I have been able to identify with any degree of confidence. In addition to the errors I have identified, both the state court and respondent believe that Ward is asserting that his lawyers were ineffective for failing to request a restitution hearing within thirty days of sentencing. However, after carefully reviewing Ward's submissions, I conclude that he has not made such a claim. Nowhere does Ward blame his lawyers for his failure to request a restitution hearing within the time established by the trial court. In any event, any errors committed with respect to the amount of Ward's restitution are not cognizable on habeas review, since restitution does not relate to Ward's "custody." Virsnieks v. Smith, 521 F.3d 707, 718 (7th Cir. 2008) (stating that award of restitution is not subject to habeas review because restitution does not affect "custody" within the meaning of habeas statutes); Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997) (same).

14

In any event, whether or not the errors included in Ward's litany amount to deficient performance under Strickland's first prong,[6] Ward's ineffective-assistance claims fail because Ward has not alleged that he was prejudiced by any of the errors. Because Ward pleaded guilty and his ineffective-assistance claims arise out of that guilty plea, to show prejudice, Ward must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted upon going to trial." Hill, 474 U.S. at 59. A habeas petitioner's failure "to allege the kind of 'prejudice' necessary to satisfy the second half of the Strickland v. Washington test" will result in the dismissal of the ineffective-assistance claim. Id. at 60; see also Schriro v. Landrigan, __ U.S. __, 127 S. Ct. 1933, 1940 (2007) (habeas applicant not entitled to relief where petition fails to allege facts which, if true, would entitle applicant to relief).

In the present case, Ward never alleges that, but for Klopp or Opgenorth's errors, he would not have pleaded guilty and would have insisted upon going to trial. Indeed,

---

[6]I doubt that Ward's attorneys' conduct fell below the standard of reasonableness articulated in Strickland. With respect to Klopp, he did not change Ward's plea to guilty. Ward changed his own plea after the judge advised him of the differences between pleading guilty and no contest and confirmed that Ward was satisfied with Klopp's advice on the matter. (Answer Ex. 73 at 11-14.) Further, Ward waived his own right to a preliminary hearing after the trial judge explained to Ward what he was waiving. (Answer Ex. 73 at 3-6.) With respect to Opgenorth, although Ward makes the conclusory allegation that Opgenorth would not move to withraw Ward's guilty plea, I cannot identify any grounds that would have justified such a motion. Wisconsin allows pleas to be withdrawn after sentencing only for "manifest injustice," Wisconsin v. Barney, 213 Wis. 2d 344, 353 (Ct. App. 1997), and I can see no such injustice in this case. There was no breach of the plea agreement, and thus Opgenorth's failure to bring any such breach to light was not erroneous. Although Ward faults Opgenorth for not making a statute-of-limitations argument, Ward's submissions on this point are too conclusory to warrant further discussion. Finally, Opgenorth's failure to challenge the exaggerated restitution claims is not an error that is cognizable on habeas review because restitution does not impact Ward's custody.

15

Ward entirely ignores Strickland's prejudice prong. Although Ward struggles to identify every possible way in which his lawyers' performances were less-than-stellar, he makes no effort to explain how his lawyers' alleged mistakes impacted his defense. And from my own review of the record, I am unable to identify any potential prejudice. I can find no indication that, but for the performance of his attorneys, Ward would not have pleaded guilty and would have insisted upon going to trial. Therefore, the state courts did not err in rejecting Ward's ineffective-assistance claims.

**C.     Judicial Misconduct**

Ward alleges that the state trial judge engaged in misconduct when he "used statements of incidents that never happened, at sentencing[,] [t]hen sentence[d] the defendant based on those incidents."[7] (Pet., Supporting Mem. at 1.) The incident in question was a statement by the presentence investigator, who reported that during his interview with Ward, Ward tore up the interviewer's notes. The judge cited this incident as a factor when pronouncing Ward's sentence. (Answer Ex. 74 at 51.) Ward denies that this incident took place.

The state court of appeals resolved Ward's claim as follows:

> Ward contends that the judge acted improperly in referring at sentencing to the fact that Ward had torn up the PSI author's notes, an act Ward denies. We reject this claim because the judge was permitted to rely on the PSI author's statement that Ward tore up his notes.

(Answer Ex. F at ¶ 8.) Although it certainly would have been desirable for the court of appeals to explain its disposition of Ward's claim more thoroughly, I cannot say that this

---

[7]In state court, Ward also argued that the trial judge was biased because he presided over some of the civil lawsuits brought by Ward's victims. Ward has not pursued this claim in his habeas petition, and therefore I do not discuss it.

16

decision was contrary to or involved an unreasonable application of clearly established Supreme Court case law. The Supreme Court has stated that judges have wide, almost unlimited discretion to determine what facts and circumstances are relevant to sentencing a criminal defendant within the statutory range. See United States v. Tucker, 404 U.S. 443, 446-47 (1972); Williams v. New York, 337 U.S. 241, 246-52 (1949). See also United States v. Grayson, 438 U.S. 41, 49-52 (1978). The Supreme Court has not identified any particular burden of proof for establishing facts relevant to sentencing, and no clearly established Supreme Court law holds that federal constitutional rights are implicated when the sentencing court relies on a fact that the defendant disputes. Indeed, the Supreme Court has stated that "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." McMillan v. Pennsylvania, 477 U.S. 79, 91 (1986). The Court has also stated that "[j]udicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments." Harris v. United States, 536 U.S. 545, 558 (2002). Finally, the Seventh Circuit has noted that

> [a] state need not prove beyond a reasonable doubt the facts that a judge deems salient to sentencing. Quite the contrary, the Court has tolerated the imposition of sentences on hunch, hearsay, anything other than "misinformation of constitutional magnitude[.]"

Jones v. Thieret, 846 F.2d 457, 461 (7th Cir. 1988). And while Ward might think that the information from the presentence investigator about Ward's tearing up his notes constitutes "misinformation of constitutional magnitude," it does not. Misinformation of constitutional magnitude means something akin to the sentencing court believing that the defendant was legitimately convicted of prior offenses when, in fact, he was not. See Tucker, 404 U.S.

17

at 447; Townsend v. Burke, 334 U.S. 736, 739-41 (1948). The incident relayed by the presentence investigator does not even begin to rise to this level. Thus, the decision of the state court of appeals, which implicitly found that the presentence report did not contain misinformation of constitutional magnitude, was not contrary to or an unreasonable application of any Supreme Court case law. Ward is therefore not entitled to habeas relief on his "judicial misconduct" claim.

**D.    Miscellaneous Motion**

One final matter needs resolution. On February 29, 2008, Ward filed a "Motion for Relief, Continuance in the Matter, and Speedy Disposition." This motion addresses various matters that do not warrant serious discussion. Essentially, the motion appears to specify the exact relief that Ward wants this court to order if it grants his habeas petition, such as his immediate release, expungement of his criminal record, and an order that the state is required to hire a taxi to take him home upon his release. The motion is groundless and therefore denied.

## IV.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that Ward's petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that Ward's motion for Relief, Continuance in the Matter, and Speedy Disposition is **DENIED**.

18

**FINALLY, IT IS ORDERED** that the clerk of court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3 day of July, 2008.

/s_____
LYNN ADELMAN
District Judge